All right, we are going on to the last case of the day, 23-19-12, Javier Guzman v. Martin O'Malley. Hello, Mr. Horne. Good morning, Your Honor. Your Honor. Your Honor. Counsel. Ladies and gentlemen. May it please the court. I'm John Horne. I represent Javier Guzman, the plaintiff appellant. And the first reason, I'm sorry, the first reason this case should be reversed and remanded is that the government, or the Social Security Administration, never produced the file on the previous claim, which contained evidence that the judge in the current claim was required to review. And that was a report on a consultative mental examination. But Mr. Horne, what legal authority imposes an obligation on the ALJ to consider evidence from a previously denied claim which was not appealed? Well, two things. One thing, this court has held that evidence from prior to the onset date is not to be excluded just because it's prior to the onset date. And further, even more importantly, Social Security ruling 96-8-P requires that it be considered. The, all the judge, all the administrative law judge had to do, assuming that nobody had done it previously, and we asked repeatedly that this file be included, was that, was to, Did you want it reopened? I'm sorry? Was your request for it to be reopened? We requested that it be reopened as well, but it's immaterial what we requested. It had to be considered whether we requested reopening or not. So you don't believe that the evidence from the prior, I'm referring to the medical evidence, was considered in this application? No, because the file was never appended to this file. So I never got to see, see, I didn't represent the claimant at the previous file. How does it support Mr. Guzman's current claim that he is disabled? I can't possibly know because I've never seen the file. I didn't represent Mr. Guzman in his previous claim. And, and, all right, never mind. All, all that had to be done was to press a couple of keys on a computer. I've seen it done in hearings. I've done a couple of thousand hearings, and, and I've seen an administrative law judge summon up the, summon up a previous file on a previous claim. Because that, that report had to be considered, plaintiff had to be allowed to see it, the report on the previous consultative mental exam. Do you have any case law that tells us that it absolutely had to be seen? Can you give us a case or two? I, I'd have to look at my, I'd have to look at my brief, my reply brief to give you that, but I rely on the Social Security ruling itself, 96-8P. That the report predates the claim doesn't excuse ignoring it. Do you want to go on to your next issue because time is short? Yes, thank you. A doctor had to consider listing 12.03. Its A criteria are different than the criteria, the A criteria for 12.04. The state agency reviewers didn't consider listing 12.03. The prism of the A criteria will be, will influence how the B criteria are viewed, and the A criteria for 12.03 are different than those for 12.04. How did you try to show that the failure to consider his schizophrenia prejudiced him? In other words, how the analysis would have looked different or would have led to a different result below? I'm sorry. The 12.03 had to be considered in terms of delusions or hallucinations, disorganized thinking, or grossly disorganized behavior. My question is this. How did you try to show that the failure to consider his schizophrenia prejudiced him below? In other words, how the analysis would have looked different or would have led to a different result? That's my question. In the district court or in front of the ALJ? In front of the ALJ, because that's the record that goes up. Well, the claimant testified that he, if I recall correctly, and the evidence showed that he thought televisions talked to him, and there was evidence of thought control, that kind of thing. That's how we attempted to show that. Finally, unless there are other questions on that issue. Finally, with respect to the ALJ's analysis of the medication side effects, the ALJ either committed factual errors or admitted evidence that supported allowance of the claim. That's set forth in the brief and the reply brief. Are there any other questions I can answer? Then I'll reserve for rebuttal. Thank you. All right. Ms. Schwartz. Good afternoon. May it please the court. My name is Allison Schwartz, and I represent the Commissioner of Social Security. For the reasons stated in the Commissioner's brief, the court should affirm the ALJ's decision. There's three arguments before the court today. The first one is that substantial evidence supported the ALJ's evaluation of mental health listing 12.03. Two state agency doctors reviewed the B and C criteria for mental health listing 12.04, which is identical to that listed in 12.03. The A criteria to which Mr. Guzman's counsel references is not relevant to the evaluation here because Mr. Guzman had to fulfill criteria B and C, and two state agency doctors held that he did not. Mr. Guzman's reference in his argument to delusions is undermined every step of the way by the record. The record showed that Mr. Guzman told his doctors almost immediately after his alleged onset date that he did not have delusions. And similarly, substantial evidence supported the ALJ's evaluation of Mr. Guzman's side effects. The ALJ thoroughly considered Mr. Guzman's allegations. She compared them in detail to the contemporaneous medical records, showing that medication alleviated his side effects, or at least lessened them. And then when he had side effects, his doctors tweaked them and alleviated the side effects once more. That said, the ALJ agreed with Mr. Guzman, or partially credited Mr. Guzman's testimony and agreed that he did experience some tiredness and fatigue and low motivation and accommodated those allegations by incorporating numerous mental and environmental limitations in her residual functional capacity assessment. Finally, Mr. Guzman has not shown that old evidence generated in connection with the previous ALJ decision, which is time-barred, needed to be included in this record. At the administrative level, Mr. Guzman's counsel repeatedly asked the agency to reopen, review, and reattach the prior medical file. At the hearing, Mr. Guzman's counsel and the ALJ had a conversation about whether the record was complete. Mr. Guzman's counsel indicated that he wanted to add some updated treatment notes. The ALJ said okay and left that record open and the treatment notes were added. Curiously, Mr. Guzman's counsel never mentioned anything about this prior evidence that he's complaining about now. Given that, the ALJ was reasonable to view Mr. Guzman's request as one to reopen, and she explained in her decision why Mr. Guzman did not meet the criteria for that. Guzman offered no evidence showing that this older evidence would have changed the outcome of the ALJ's decision that he wasn't disabled as of July 2019. This is especially so when ample evidence predating Mr. Guzman's alleged onset date was included in the record and the ALJ discussed that in her decision. This is not a situation where the ALJ excluded evidence that related to the period before the consideration. And I would like to say this, you know, it's so obvious that he has severe mental impairment. And, of course, the ALJ found that there were 267,000 representative occupations in the national economy, although he can't have any contact with the public and only occasionally with coworkers. And when you get, when you look at the jobs, cleaner, collator operator, and router, it just, I just wonder, because you've got bipolar disease and schizophrenia, but bipolar disease causes extreme mood shifts. Schizophrenia causes delusions and hallucination. I really can't but wonder about the whole situation here. With regard to the delusions and hallucinations, the record showed that almost immediately after his alleged onset date, Mr. Guzman told his doctors repeatedly at all of his appointments that he didn't have delusions or hallucinations. He had a constricted effect, but otherwise his behavior was okay at examination. So I do understand that just, you know, sort of by the sound of these diagnoses alone sounds severe, but a diagnosis isn't enough for a person to be deemed disabled. So what an ALJ has to do is review the record and see what the course of treatment is and whether the course of treatment alleviated his symptoms. With regard to these jobs, you know, just to speak to one of them, the cleaner job, you know, that would be a job, you know, there's many cleaners in the economy, which we could all sort of contemplate what that looks like. And that would be somebody who, for instance, you know, cleans a hotel room. That's a solitary job. You're doing the same thing day in and day out. You don't really have to deal with people. And there's little in the change of processes. Well, there certainly are people around. And, you know, he's someone that probably, you know, shouldn't have any contact with the public. Well, when the ALJ reviewed the record, the ALJ did impose limitations. Let me just get to the exact social limitations. It is a job that does not have any contact with the public. So just because he might maybe, say, see somebody in public in the hall, that does not mean that he is actually interacting with the public or having contact with the public. And given the record, that seems reasonable. He testified that he could go to doctor's appointments by himself. He goes out for walks by himself. Before COVID, he used to go to church. So he actually was around other people. The ALJ credited his allegations by, you know, really limiting his social interactions. But there isn't any evidence that suggests that Mr. Guzman needs to be completely isolated from all individuals. And if the court has no further questions, I would urge them to affirm the ALJ's decision. Thank you. Thank you so much, Ms. Schwartz. Thank you. Thank you so much. And I'm going to call Mr. Horn back because he has almost three minutes. In response to some of the questions I couldn't answer the first time around, the cases we cited in support of requiring the government to produce evidence from before the onset date are Doherty v. Astor and Robert M. W. v. Saul. Robert M. W. v. Saul was the successor case to a Seventh Circuit reversal here, which another ALJ declined to follow. But yes, and that case might contain language as well. Now, that would be Williams v. I think Berryhill, Williams v. Berryhill, the successor to Robert M. W. v. Saul. Then I just thought I'd correct something that my gracious opponent might have erred on. We requested the previous record five times by my count. We requested it when we applied. That was in, I believe, July 2020. And then we requested it at reconsideration in February 2021. We requested it May 2021 when we filed for, no, we filed, we requested May of 2021, then July of 2021, and in August of 2021. So it's not like we didn't hammer away at getting this evidence produced prior to the hearing. And this is a civil case, but if it were a criminal case, I heard Brady mentioned in the last case, and we'd probably be doing something under Brady in this case because the government ought not to be allowed to sit on relevant evidence. And that's why this case should be reversed and remanded. Thank you. Thank you, Mr. Horn. Thank you, Ms. Schwartz. Thank you very much. Thank you to all counsel, and the case will be taken under advisement, and the court will be in recess until tomorrow morning at 930. And thank you, Judge Brennan, and thank you, Judge Breyer. Very good to see you. Thank you, everybody.